1

2

3

4

5

6

7

8  **UNITED STATES DISTRICT COURT**

9  EASTERN DISTRICT OF CALIFORNIA

10

11  NICOLE G. ALVAREZ-HERRERA,          Case No. 1:19-cv-00243-SAB

12              Plaintiff,              ORDER GRANTING PLAINTIFF'S SOCIAL
                                        SECURITY APPEAL AND REMANDING
13        v.                            ACTION

14  COMMISSIONER OF SOCIAL              (ECF Nos. 14, 19, 20)
    SECURITY,
15
                Defendant.
16

17                                      **I.**

18                              **INTRODUCTION**

19        Nicole G. Alvarez-Herrera ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21  disability benefits pursuant to the Social Security Act.  The matter is currently before the Court

22  on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley

23  A. Boone.[1]

24        Plaintiff suffers from systemic lupus erythematosus, diabetes mellitus-insulin-dependent,

25  hypertension, and status-post heart catheterization.  For the reasons set forth below, Plaintiff's

26  Social Security appeal shall be granted.

27

28  ───────────────────
    [1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on March 6, 2015. (AR 73, 74.) Plaintiff's applications were initially denied on July 3, 2015, and denied upon reconsideration on October 9, 2015. (AR 97-101, 104-108.) Plaintiff requested and received a hearing before Administrative Law Judge Ruxana Meyer ("the ALJ"). Plaintiff appeared for a hearing on March 7, 2018. (AR 29-54.) On April 27, 2018, the ALJ found that Plaintiff was not disabled. (AR 12-24.) The Appeals Council denied Plaintiff's request for review on December 18, 2018. (AR 6-8.)

### A.    Relevant Hearing Testimony

Plaintiff appeared and testified at the March 7, 2018 hearing with counsel. (AR 32-49.) Plaintiff completed the eleventh grade but did go to college. (AR 35.) She was a teacher's assistant and was required to attend school. She completed about forty-six college units. (AR 35.) Plaintiff is 5' 4" tall and weighs 147 pounds. (AR 41.)

Plaintiff is going through a separation. (AR 34.) She lives with her two children who are 6 and 8 years old. (AR 33.) Plaintiff drives her children to and from school every day but they are sometimes picked up by her father. (AR 33.) Her father will pick them up about twice a week because she is in pain and cannot get out of bed. (AR 33.) The school is about a five-minute drive. (AR 30.) Twice a month, on Saturdays, Plaintiff's children have activities at school and she will take them. (AR 45.) Plaintiff was dropped off at the hearing by her father. (AR 34-35.)

She also has a dog that weighs about fifty pounds. (AR 33, 34.) Her children walk the dog and she will go with them sometimes. (AR 34.)

Plaintiff worked for Fresno Unified School District for fifteen years. (AR 36.) Plaintiff last worked as a teacher's aide in March 2015. (AR 36.) Plaintiff was unable to continue working because the work required her to do a lot of prep work with her hand and her hands started to hurt. (AR 36.) Her back would really hurt. (AR 36.) Plaintiff would have to put

supplies away and it was hard for her to lift and carry things. (AR 36-37.) She missed a lot of work due to pain and she resigned. (AR 37.) Plaintiff was not covered by State Disability. (AR 37.) She worked as home health aid in 2004 for her parents. (AR 48.)

About nine years ago, Plaintiff discovered that she had lupus. (AR 37.) Periodically, about twice a month, she would have flare-ups. (AR 37.) Then she started having more flare-ups. (AR 37-38.) Her doctor put her on medication, but the side effects were really bad so he put her on Norco. (AR 38.) The Norco helps a little bit but she does have constipation, drowsiness, she feels off balance. (AR 38.) Plaintiff only takes the Norco when she really needs them. (AR 38.) She takes them three times a day every day. (AR 39.) At nighttime she will take them three times a week. (AR 39.) Plaintiff only receives 45 pills so she has to monitor them. (AR 39.)

The weather affects Plaintiff's pain. (AR 45.) During cold weather she hurts more. (AR 45.) Her legs and lower back and sometimes her neck will hurt. (AR 45.) She told her doctor about the pain and he told her to use her pain medication. (AR 46.) Plaintiff can sit for ten minutes. (AR 46.) Sometimes, about three times a week, she will need to elevate her feet while she is lying down. (AR 46.) Plaintiff gets swelling in her chest, hands, and feet every other day. (AR 46.) She rests and uses a heating pad. (AR 46.) Sometimes it will last a full day. (AR 46.) About three times a month, Plaintiff's feet will swell so that she cannot get her shoes on due to neuropathy. (AR 46-47.) For the past six months, Plaintiff has been unable to get out of bed two days a week due to pain in her back and chest, leg cramps, nausea, and fatigue. (AR 47.) Before that she would have one day a week where she was unable to get out of bed. (AR 47.)

Plaintiff does the grocery shopping and sometimes her mom will help her. (AR 39.) She shops at FoodCo, WinCo and sometimes Costco. (AR 39.) Plaintiff cannot handle heavy items, like a case of water or a large container of oil. (AR 40.) Her mom or dad or son will help her. (AR 40.) Plaintiff is unable to pick up her six-year-old who weighs forty pounds. (AR 40.) Plaintiff can lift ten pounds but more than that and she will lose her grip. (AR 40.) Plaintiff can stand for ten minutes before needing to rest her legs and lower back. (AR 40.) She can walk a quarter of a block or for about ten minutes. (AR 40.)

Plaintiff has diabetes and takes injections three times a day. (AR 41.) She has been injecting insulin for eight years. (AR 41.) Plaintiff has gone from 210 pounds to 147 pounds. (AR 41.) She changed her eating habits, and uses no sodas or sugar and takes more vegetables and water. (AR 42.) She checks her blood sugar three times a day and it is under control now. (AR 42.) Plaintiff does not do any exercise. (AR 42.)

Along with the Norco and insulin, Plaintiff takes a muscle relaxer for leg cramps, and Gabapentin for pain and swelling in her hands and feet. (AR 42-43.) She was on a steroid for a time because her lung was swollen and an inhaler, but no longer. (AR 43.)

Plaintiff does not go anywhere on a regular basis. (AR 43.) After she drops her children off at school she goes home and rests. (AR 43.) She will lay in her recliner or in her bed. (AR 43.) Plaintiff spends five hours a day lying down. (AR 43.) She just lays there trying to make herself comfortable. (AR 43.) Sometimes she will watch television. (AR 43.) She can watch television for fifteen minutes before she has to take a break for twenty minutes. (AR 45.)

Plaintiff does cook for her family. (AR 43.) She sometimes uses prepared meals and just warms them up. (AR 43.) But the rest of the time she cooks. (AR 44.) Plaintiff takes the trash out but if she is not feeling well her son will do it. (AR 44.) Plaintiff does laundry but it is hard to fold cloths and she will rest. (AR 44.) Plaintiff can fold clothes for about ten minutes and then her hands will cramp so she will rest for fifteen minutes. (AR 44.)

Plaintiff had a catherization for her chest pain, but she is still having chest pain. (AR 44.) They tell her it is from rheumatoid arthritis in the ribs. (AR 44.) They did a chest x-ray and it came out okay. (AR 44-45.)

Cheryl R. Chandler, a vocational expert, also testified at the hearing. (AR 49-53.)

**B.      ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021.

- Plaintiff has not engaged in substantial gainful activity since August 30, 2014, the alleged onset date.

- Plaintiff has the following severe impairments: systemic lupus erythematosus, diabetes mellitus-insulin-dependent, hypertension, and status-post heart catheterization.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform work as follows: lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk 4 to 6 hours out of an 8-hour workday; she can sit for 6 hours out of an 8-hour workday. She can frequently climb, balance, stoop, kneel, crouch, crawl, and handle/finger with the bilateral upper extremities. She can do work involving less than occasional exposure to dangerous moving machinery, unprotected heights, and UV light, and work that does not involve concentrated exposure to extreme cold temperatures in the workplace.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on September 3, 1975, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

- Plaintiff has a limited education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not Plaintiff has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability as defined in the Social Security Act from August 30, 2014, through the date of this decision.

(AR 17-24.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

(internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

### DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject her symptom testimony. Plaintiff contends that the ALJ only provided a boilerplate statement along with the conclusion that her complaints were not consistent with the evidence and objective medical evidence without identifying which testimony was found not to be credible. Plaintiff argues that the only reason the ALJ provided to reject her symptom testimony is the medical evidence of record which cannot alone support the adverse credibility finding. Further, Plaintiff contends that the ALJ's finding that the medical record reflects rather mild positive findings, as well as routine and conservative treatment is not supported in the record.

The Commissioner counters that ALJ properly found that Plaintiff's symptom testimony was inconsistent with the record. The Commissioner argues that the ALJ set forth a detailed record of Plaintiff's testimony and written statements regarding her symptoms and specifically pointed out that there were multiple instances of normal physical examinations in the record. Further, the Commissioner contends that the ALJ did not only rely on the inconsistencies with the medical record, but pointed out that Plaintiff received routine and conservative treatment that was largely effective.

Plaintiff replies that the limited analysis and general findings provided by the ALJ are not sufficient to reject her symptom testimony. Plaintiff contends that the ALJ did not identify any specific testimony that was found to not be credible or identify which evidence undermined her statements. Further, Plaintiff argues that the Commissioner is providing post hoc explanations to explain the credibility finding and the court is constrained to review those reasons provided by the ALJ.

## A.    Claimant Credibility Legal Standard

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . .." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

### B.    ALJ's Opinion

The ALJ set forth Plaintiff's symptom testimony.

> The claimant alleged that her physical impairments inhibit her ability to work or perform daily activities. In her hearing testimony, the claimant stated that she could no longer work because she has flare-ups from lupus approximately twice a month. In addition, the claimant indicated that she has side effects from Methotrexate which were headache and jitteriness, and was thus switched to Norco which causes constipation and drowsiness. She further testified that she is not able to grip or lift objects more than 10 pounds. The claimant stated that she has diabetes mellitus and is insulin dependent, keeping to a strict diet for blood sugar control. The claimant also testified that the cold weather affects her pain, specifically in her legs and neck.
>
> In addition to the claimant's testimony, the undersigned has also considered the Exertional Activities Questionnaire completed by the claimant on March 25, 2015 [AR 234-236]. The claimant's statements in this function report is [sic] of the same general nature as the claimant's testimony.

(AR 19.)

The ALJ stated that after consideration of the evidence, she found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but her statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record as explained in the decision. (AR 19-20.)

The ALJ noted that Plaintiff had sought routine treatment for her impairments that were largely effective. (AR 20.) Plaintiff's diabetes mellitus was controlled by medication, she was generally asymptomatic, and her treating doctor stated that her diabetes treatment regimen was

largely effective.  (AR 20, 289, 310.)  Despite claimant's allegations, the ALJ found that the medical evidence reflected rather mild positive findings as well as routine and conservative treatment.  (AR 20, 340-931.)  The ALJ acknowledged that the medical record exhibits some positive objective findings, but demonstrates that Plaintiff's physical impairments are not preclusive of all work activity.  (AR 21.)

In sum, the ALJ found Plaintiff's subjective complaints are not fully consistent with the evidence and the objective medical evidence does not support the alleged severity of symptoms. (AR 22.)

### C.    The ALJ Failed to Provide Clear and Convincing Reasons to Reject Plaintiff's Symptom Testimony

The ALJ noted that Plaintiff alleged that she was unable to work due flare-ups from her lupus twice a month, she was taking Norco for the pain which caused her side effects, and she was unable to grip or lift objects more than 10 pounds.  (AR 19.)  He also considered the exertional questionnaire in which Plaintiff stated that she was in pain all day from her legs and hands and her medication made her very sleepy.  (AR 234.)  Her hands hurt when she uses them and she is unable to get up off the floor.  (AR 234.)  Plaintiff at times feels that her legs are going to give out.  (AR 234.)  She goes grocery shopping one to two times per month and cannot lift heavy items.  (AR 235.)  She does not clean her home and when she tries to do dishes she drops and breaks them.  (AR 235.)  She can drive for one hour at the most and then her feet hurt and she is unable to do yardwork anymore.  (AR 235.)  Plaintiff can only do chores for 20 minutes and then the pain and cramps stop her.  (AR 246.)  She requires naps of two to three hours two times a week.  (AR 236.).  Plaintiff is always in pain, gets rashes on her face, and has swelling in the mornings.  (AR 236.)

The ALJ noted that Plaintiff had flare ups twice a month, but her testimony was that she used to have flare ups twice a month and that they were now more frequent.  (AR 37-38.)  While the ALJ found that Plaintiff sought routine treatment for her impairments and that her diabetes mellitus was controlled with medication and generally asymptomatic, he noted that Plaintiff was prescribed Naproxen and Methotrexate for her lupus symptoms.  (AR 20.)  Plaintiff complained

of stiff hand joints and she was prescribed additional pain medication while the doctor overall maintained her treatment regimen while switching her to Norco for pain. (AR 20.) The ALJ stated that despite her allegations of disabling symptoms, the medical record reflected rather mild positive findings as well as routine and conservative treatment.

While evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment, Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), in this instance, Plaintiff was receiving narcotic pain medication for her lupus symptoms and testified that she used the medication only when she really needed them which was three to four times per day. (AR 38-39.) She further testified that she was on the waiting list to receive to pain management because she has MediCal. (AR 39.) The ALJ did not address any more aggressive treatment that could have been provided to Plaintiff to treat her lupus symptoms. Substantial evidence does not support the ALJ's finding that Plaintiff has only received conservative treatment for her lupus. This is not a clear and convincing reason to reject her pain testimony.

Defendant argues that the ALJ also found that Plaintiff's symptoms were well controlled, but this finding was made only as to Plaintiff's diabetes mellitus. (AR 20.) The ALJ did note that "[w]hen the claimant complained of stiff hand joints, the doctor prescribed the claimant additional pain medication but overall the doctor generally maintained the claimant's treatment regimen medication which was switched to the pain medication Norco." (AR 20.) However, the ALJ made no findings as to how Plaintiff's pain symptoms were controlled by her medication. The fact that Plaintiff's pain medication was changed and she continued to receive medication is not a clear and convincing reason to reject her pain testimony.

Defendant contends that the ALJ pointed to the specific objective findings in the medical record that contradict Plaintiff's testimony. The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). However, the ALJ cannot discredit Plaintiff's pain testimony solely because it is found not to be supported by the objective medical

evidence. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991). As discussed above, the Court finds that the other reasons that the ALJ gave for discrediting Plaintiff's are not clear and convincing reasons to reject her pain testimony. Therefore, inconsistencies with the objective medical evidence alone is not a clear and convincing reason to reject Plaintiff's symptom testimony.

The Court finds that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony. "[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." Brown-Hunter, 806 F.3d at 495 (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1106 (9th Cir. 2014)). If on remand, in addition to inconsistencies with objective evidence and clinical evaluations, the ALJ provides other clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony, then the inconsistencies with objective evidence and clinical evaluations may be a proper reason for rejecting Plaintiff's credibility.

While Plaintiff alleges that she lies down for five hours a day doing nothing, it appears that she is a single parent who has been caring for her two young children alone since June 15, 2015. (AR 195.) She gets her children to school in the morning, picks them up from school, takes them to activities on the weekend, prepares meals, and does the shopping and laundry. Although Plaintiff stated at the hearing that she does not do any household chores or yardwork, she stated that she hurts if she does chores for more than twenty minutes and is able to do housework. (AR 236, 240.) There are also indications in the record that she was engaging in physical exercise half an hour a day. (AR 291, 298, 307.)

Further, as the ALJ pointed out there are significant conflicts between the relatively mild objective findings in the medical record and Plaintiff's symptom testimony. Although the ALJ noted that Plaintiff had sought routine treatment for her impairments that were largely effective, (AR 20), she did not discuss or point to any specific evidence as to how Plaintiff's pain testimony was inconsistent with the medical record. However, the Court finds that there is

evidence in the medical record that Plaintiff manages her chronic pain well with her medication and her doctor has recommended aerobic exercise which is inconsistent with her symptom testimony.  (AR 851, 855, 859, 862, 866, 873, 877, 884, 902, 906, 909.)  Finally, the doctor opinions on Plaintiff's physical limitations are inconsistent with her testimony.  (AR 69-70, 80-82, 332-338.)  The Court finds that this evidence requires this matter to be remanded for the ALJ to further develop the record.  Based on the evidence in the record showing inconsistencies between Plaintiff's testimony and the medical record, the Court cannot find that Plaintiff is entitled to benefits.  Accordingly, the Court finds that this matter should be remanded to the Commissioner for further consideration of Plaintiff's symptom testimony.

The Social Security regulations require the Commissioner to set forth a discussion of the evidence, and the reason or reasons upon which the decision is based.  42 U.S.C. § 405(b)(1)).  The ALJ is advised that the agency must explain its reasoning in order for the Court to be able to perform a meaningful review.  To meet the burden, the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony."  Treichler, 775 F.3d at 1102 (quoting Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001)).  Accordingly, "[g]eneral findings are insufficient" for an ALJ to meet the burden of setting forth clear and convincing reasons to reject a claimant's testimony.  Treichler, 775 F.3d at 1102.

///

///

///

///

///

///

///

///

///

///

# V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred by failing to provide clear and convincing reasons to reject her symptom testimony.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.

It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Nicole G. Alvarez-Herrera and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**January 30, 2020**__

_____
UNITED STATES MAGISTRATE JUDGE